1  Christian R. Castro (SBN 294955)
   e-mail: ccastro@slpattorney.com
2  **STRATEGIC LEGAL PRACTICES, APC**
   1888 Century Park East, 19th Floor
3  Los Angeles, CA 90067
   Telephone:   (310) 929-4900
4  Facsimile:   (310) 943-3838

5  Attorneys for Plaintiff,
   NATALE MERCURI
6

7            UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9
   NATALE MERCURI,                    Case No. 5:23-cv-01159-WLH
10                                     (MRWx)
              Plaintiff,
11                                     Hon. Wesley L. Hsu
       v.
12
13 VOLKSWAGEN GROUP OF               **PLAINTIFF'S NOTICE OF**
   AMERICA, INC.; AUDI RANCHO        **MOTION AND MOTION FOR**
14 MIRAGE; and DOES 1 through 10,    **ATTORNEYS' FEES, COSTS, AND**
   inclusive,                         **EXPENSES**
15
16                                    St. Ct. Action Filed: May 15, 2023
              Defendants.             Removal Filed: June 15, 2023
17
18                                    Date: December 13, 2024
                                      Time: 1:30 p.m.
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE COURT, DEFENDANT, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 13, 2024, at 1:30 p.m. of the above-captioned court located at First Street Courthouse, 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012, Plaintiff NATALE MERCURI ("Plaintiff") will, and hereby does, move the Court, pursuant to a signed FRCP Rule 68 Offer of Judgment ("Rule 68 Offer"), the Song-Beverly Consumer Warranty Act ("SBA"), the Magnuson-Moss Warranty Act ("MMWA"), and California Civil Code § 1794(d) ("1794(d)"), for an Order awarding attorney fees, costs, and expenses in the total amount of $129,468.43. This amount consists of (1) $85.193.00 in attorney fees for Strategic Legal Practices, APC ("SLP"); (2) a 1.35 multiplier enhancement on the attorney fees (or $29,817.55); (3) $17,965.01 in costs and expenses for SLP; and (4) an additional $5,000.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion (though counsel expects to incur over $5,000.00 in fees on these tasks).[1]

This Motion is made on the grounds that Plaintiff is the prevailing party under the terms of the SBA claims at issue in this lawsuit. Thus, Plaintiff is entitled to statutory attorneys' fees, costs, and expenses pursuant to 1794(d):

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code. § 1794(d).

This Motion is based on this Notice; the Memorandum of Points and

---

[1] Although 15 SLP attorneys and 2 law clerks were staffed on this case, only 6 attorneys (Mani Arabi, Christian Castro, Joy de Leon, Elizabeth Larocque, Regina Liou and Ian McCallister) accounted for 111.00 hours out of the 156.30 total hours billed (i.e. 71%) with other attorneys performing non-duplicative tasks, such as: Ms. Mejia billing a total of 1.1 hours for drafting and finalizing Plaintiff's Federal Discovery Requests for Notice of PMQ Deposition, RFPs, and ROGs; Mr. Calderon billing a total of 2.0 hours for drafting repair chron; and Ms. Stoliker billing a total of 1.6 hours for drafting Plaintiff's Mandatory Settlement Conference Statement and Remote Appearance request.

1  Authorities; the Declaration of Christian R. Castro; the Declaration of Payam

2  Shahian; the Request for Judicial Notice; the pleadings and papers on file herein;

3  and on any other matter that may be presented to the Court at or before the hearing

4  on this matter.

5  Dated: November 12. 2024                  */s/ Christian R. Castro*

6                                            Christian R. Castro
                                             Strategic Legal Practices
7                                            Attorney for Plaintiff

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 4

    A.   Defendant Refuses to Provide Plaintiff with Relief Under the Lemon Law ................................................................................................... 4

    B.   Plaintiff's Counsel Achieves a Settlement for Plaintiff......................... 4

III.  LEGAL ANALYSIS ................................................................................... 5

    A.   As the Prevailing Party, Plaintiff is Entitled to Attorneys' Fees, Costs, and Expenses ....................................................................................... 5

    B.   Plaintiff's Lodestar Fees is Reasonable ................................................ 6

        1.   Plaintiff's Counsel's Hourly Rates are Reasonable ...................... 8

        2.   Plaintiff's Counsel's Billable Hours are Reasonable .................. 11

    C.   A Lodestar Multiplier Enhancement of 1.35 is Warranted................. 14

        1.   Plaintiff's Counsel Obtained an Excellent Outcome................... 14

        2.   The Risks Posed by This Litigation Were Substantial ................ 15

        3.   Delay of Payment Justifies a Multiplier...................................... 16

    D.   Defendant Has Agreed to Pay Plaintiff's Litigation Expenses........... 16

IV.  CONCLUSION......................................................................................... 17

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989) .................................................. 12

4   *Drouin v. Fleetwood Enterprises*, 163 Cal. App 3d 486 (1985)........................... 5

5   *Estate of Trynin,* 49 Cal.3d 868 (1989) ...................................................... 5

6   *Forouzan v. BMW of N. Am.*, 2019 WL 856395, at *6 (C.D. Cal. Jan. 11, 2019)

7   ............................................................................................... 10

8   *Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 471-742 (2016) ............... 2

9   *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2005)............................. 12

10   *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509 (2003) ................................ 9

11   *Holcomb v. BMW of North America, LLC*, 2020 WL 759285, at *3 (S.D. Cal.

12   Feb. 14, 2020) ............................................................................... 11

13   *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th

14   359 (2005).................................................................................... 9

15   *In re Consumer Privacy Cases*, 175 Cal. App.4th 545 (2009) ..............6, 7, 11, 12

16   *In re Vitamin Cases*, 110 Cal. App. 4th 1041 (2003) ...................................... 11

17   *Jensen v. BMW of North America*, 35 Cal. App. 4th 112 (1995)....................... 13

18   *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001)...............................6, 7, 12, 13

19   *Klingenberg v. KMA* (Los Angeles Co. Super. Ct., Civil Case No. BC709888) ... 1

20   *Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995) ..... 2, 3

21   *Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992) ........................ 7

22   *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ................... 7

23   *Martino v. Denevi*, 182 Cal. App. 3d 553 (1986) ........................................ 9

24   *Missouri v. Jenkins, supra*, 491 U.S. 274, 284 (1989)................................... 13

25   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) ............... 10

26   *Niederer v. Ferreira*, 189 Cal. App. 3d 1485 (1987).......................................... 5

27   *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 807 (1994)......................... 7

28   *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103-04 (2001) .......... 3

*Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4t.h 101, 114 (2009) ....... 4,9

*Petersen v. FCA US, LLC*, No. CV 21-1386 DSF (EX), 2022 WL 2255099, at *5 (C.D. Cal. June 21, 2022) .................................................................................. 1

*Proa v. KMA* (Los Angeles Super. Ct., Case No. BC716646) (April 24, 2023) . 1, 6, 8, 10

*Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1204 (C.D. Cal. 2022) 1, 6, 8, 10

*Reck v. FCA US LLC*, 64 Cal. App. 5th 682, 698 (2022)  ................................... 3

*Reynolds v. Ford Motor Co*., 47 Cal. App. 5th 1105, 1113 (2020) ............ 5, 6, 11

*Robertson v. Fleetwood Travel Trailers of California, Inc*., 144 Cal.App.4th 785 (2006)................................................................................................... 5, 7, 9

*Rodriguez, et al, v. Hyundai Motor America* (Los Angeles Super. Ct., Case No. 21STCV01655) (July 6, 2023) ................................................................ 5, 6, 1

*Santana v. FCA US, LLC*, 56 Cal.App.5th 334 (2020)...................................... 11

*Sedlacek IV v. General Motors, LLC* (Los Angeles Co. Super. Ct. Civil Case No. 21STCV23811) (October 16, 2023) ........................................................... 2. 8

*Serrano v. Unruh, 32 Cal. 3d 621 (1982)* ......................................................... 5

*Sommers v. Erb*, 2 Cal. App. 4th 1644 (1992)..................................................... 9

*Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990)........................................... 9

*Williams v. Ford Motor Co*., No. 521CV01346SPGSHK, 2023 WL 405346, at *3 (C.D. Cal. Jan. 24, 2023) ......................................................................... 1, 7, 8

*Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1227 (C.D. Cal. Mar. 3, 2020)........................................................................................................ 1

*Zomorodian v. BMW of N. Am.*, 2019 WL 6534513 at *8 (C.D. Cal. July 23, 2019)................................................................................................... 1,10

**STATUTES**

Cal. Civ. Code § 1794(d).........................................................1, 4, 5, 13

**OTHER AUTHORITIES**

Leubsdorf, *The Contingency Factor in Attorney Fee Awards,* 90 Yale L.J. 473,

480 (1981).................................................................................................. 12

PLAINTIFF'S NOTICE OF AND MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES

## I.    INTRODUCTION

This Motion is made after several meet and confer efforts. Unfortunately, the Parties were unable to reach a resolution prior to the Court's filing deadline.

This is a motion for statutorily authorized attorneys' fees following a victory NATALE MERCURI ("Plaintiff") in this lawsuit pursuant to the Magnusen Moss Warranty Act ("MMWA") and the Song-Beverly Consumer Warranty Act ("SBA"). The parties have engaged in several meet and confer efforts but have been unsuccessful in resolving the issue of Attorney's Fees before the Court's deadline. This victory consists of a signed Rule 68 Offer of Judgment in which the Defendant, VOLKSWAGEN GROUP OF AMERICA ("Defendant") ultimately agreed to settle Plaintiff's claim regarding their 2021 Audi Q5 vehicle identification number WA1BAAFY7M2103879, (hereafter "Vehicle" or "Subject Vehicle") for $140,000.00 plus attorneys' fees, costs, and expenses pursuant to Cal. Civ. Code 1794(d) by motion to the Court. (Castro Decl. ¶¶ 3, 26, Ex. 2.) Plaintiff purchased the Vehicle on June 12, 2021, for a total purchase price of approximately $55,967.00. (*Id.* at ¶ 3, Ex. 1.)

Courts in Los Angeles County, the Central District, and across California have routinely awarded Plaintiff's counsel's requested fees under similar circumstances. *See, e.g., Williams v. Ford Motor Co.,* No. 521CV01346SPGSHK, 2023 WL 405346, at *3 (C.D. Cal. Jan. 24, 2023) (See Shahian Decl. Ex. 12) the Central District Court granted 100% of SLP's requested fees and approved hourly rates ranging from $295 to $595) [2]; *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199 (C.D. Cal. 2022), the

---

[2] Indeed, in approving SLP rates ranging from $295/hr. to $595/hr. in the Central District (where Los Angeles County sits) in *Williams v. Ford*, the court found that:

> In opposition, Defendant cites several cases where lower rates were awarded and argues that Plaintiffs' counsel's rates are unjustifiably high and should be reduced. *See* (Opp. at 13-15). However, none of those cases involved Strategic Legal Practices. Instead, as Plaintiffs point out, courts in this district routinely find Strategic Legal Practices' hourly rates to be reasonable. *See, e.g., Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1204 (C.D. Cal. 2022); *Petersen v. FCA US, LLC*, No. CV 21-1386 DSF (EX), 2022 WL 2255099, at *5 (C.D. Cal. June 21, 2022); *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1227 (C.D. Cal. Mar. 3, 2020); *Zomorodian v. BMW of N. Am., LLC*, No. CV 17-5061-DMG (PLAx), 2019 WL 6534513, at *5 (C.D. Cal. July 23, 2019). This Court agrees that Plaintiffs have sufficiently established that the

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Central District court (against this same Defendant and defense counsel) granted 90% of SLP's requested lodestar fees and approved counsel's rates ranging from $285/hr to $695/hr. (*See* Shahian Decl., Ex. 10.) Recently, *Luis Palos v. Kia Motors America* (Los Angeles Super. Ct. Civil Case No. BC715391) (August 15, 2024) where the Court determined that SLP rates from $385/hr to $620/hr were reasonable and granted SLP a 35% multiplier. (See Shahian Decl. ¶ 46, Ex. 21.) *Sedlacek IV v. General Motors, LLC* (Los Angeles Co. Super. Ct. Civil Case No. 21STCV23811) (October 16, 2023) (Los Angeles County is within the Central District), where the Court approved the rates of SLP attorneys ranging from $295 to $610/hour and awarded 100% of Plaintiffs' fees. (*Id.* at Ex. 16). *See Diana Parros v. Kia Motors America, Inc.* (Los Angeles Super. Ct. Civil Case No. BC710391) (April 5, 2024), where the Court determined that SLP rates from $295/hr to $625/hour were reasonable, granted 95% of SLP's requested fees, and granted SLP a 35% multiplier. (*Id.* at Ex. 18.)

Plaintiff obtained this victory after over a year of litigation in Federal Court which would not have been possible without the diligent efforts of counsel, including: drafting and filing the Complaint in State Court; filing a Joint Report Rule 26(f) Discovery Plan; engaging in discovery with Defendant; filing seven Motions in Limine; responding to Defendant's five Motions in Limine; responding to Defendant's discovery requests and reviewing Defendant's discovery responses; attending various hearings. (*See* Castro Decl. ¶¶ 12-28.) Defendant ultimately agreed to buy back the Vehicle for $140,000.00 plus attorneys' fees, costs, and expenses by single motion to the Court. (*Id.* at ¶ 26, Ex. 2.)

Notably, this action would not have been necessary had Defendant, consistent with its affirmative duties under the SBA, agreed to repurchase Plaintiff's Lemon

---

requested hourly rates for each attorney involved in this case are reasonable. *See id.* (finding Shahian's declaration sufficient to establish the reasonableness of Strategic Legal Practices' attorneys' rates.

*Williams v. Ford Motor Co*., No. 521CV01346SPGSHK, 2023 WL 405346, at *3 (C.D. Cal. Jan. 24, 2023) (*See* Shahian Decl. Ex. 12).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Vehicle under the SBA *before filing the Complaint*. [3] Defendant knew that Plaintiff's Vehicle suffered from debilitating defects, derived from multiple sources, including internal investigations into the defects and specific knowledge of Plaintiff's repair history, in which the Plaintiff was forced to take the Vehicle to the dealership multiple times for repairs. (*Id.* at ¶¶ 5-11.) Defendant failed to provide Plaintiff with restitution for their Lemon Vehicle and affirmative obligation to provide Plaintiff with relief under the SBA.

Defendant may claim in its Opposition that Plaintiff's efforts were "unnecessary" or their fees "unreasonable." The California Court of Appeal has expressly rejected this argument, holding that until a case settles, Plaintiff us entitled to prepare their case for trial and should be paid their reasonable fees under section 1794(d) for the pursuit of their Song Beverly damages. *See Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 473 (2016) ("[u]ntil the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. She also had to be prepared to counter the numerous affirmative defenses raised in the answers to her complaint. We, therefore, cannot conclude the court abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable.") Here, after over a year of litigation, Defendant ultimately agreed to settle the case for $140,000.00 plus attorneys' fees, costs, and expenses. (*See generally* Castro Decl.) Thus, under *Goglin*, Plaintiff's fees incurred until settlement were reasonable.

As the prevailing party under the SBA, Plaintiff is entitled to recover all fees, costs, and expenses reasonably incurred in the "commencement and prosecution" of this action. *See* Cal. Civ. Code § 1794(d). Here, after over a year of litigation, Defendant ultimately agreed to settle the claims relating to the Subject Vehicle for $140,000.00 plus attorneys' fees, costs, and expenses. (*See* Castro Decl. ¶ 26, Ex. 2.)

---

[3] *See Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995) ("[T]he Song-Beverly Act 'creates an affirmative duty upon **the manufacturer** ... to provide restitution or replacement when a covered defect ... is not repaired after a reasonable number of attempts.'") (emphasis added)

Thus, under the SBA, Plaintiff is entitled to recovery of all attorneys' fees, costs, and expenses.

Accordingly, the only issue here is whether to award the requested fee award of $129,468.43. This amount consists of (1) $85.193.00 in attorney fees for Strategic Legal Practices, APC ("SLP"); (2) a 1.35 multiplier enhancement on the attorney fees (or $29,817.55); (3) $17,965.01 in costs and expenses for SLP; and (4) an additional $5,000.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion (though counsel expects to incur over $5,000.00 in fees on these tasks).

## II.   STATEMENT OF FACTS

### A.   Defendant Refuses to Provide Plaintiff with Relief Under the Lemon Law

On June 12, 2021, Plaintiff purchased a 2021 Audi Q5 for a total purchase price of approximately $55,967.00, which was manufactured and or distributed by Defendant. (*See* Castro Decl. ¶ 3, Ex. 1.) As a result of various defects, Plaintiff was forced to take the Vehicle to the dealership on multiple occasions for repairs, but Defendant was unable to conform the Vehicle to warranty or provide Plaintiff with restitution in compliance with its affirmative obligation under the SBA. (*Id.* at ¶¶ 5-11.)[4]

### B.   Plaintiff's Counsel Achieves a Settlement for Plaintiff

Left with no recourse after Defendant's failure to promptly offer a full statutory repurchase of the Vehicle, Plaintiff hired SLP on a contingency basis to assist in vindicating Plaintiff's rights and filed this lawsuit on May 15, 2023, alleging various causes of action including violations of the SBA and MMWA. (*Id.* at ¶ 12.) During this litigation, Plaintiff incurred attorney fees, costs, and expenses for various tasks,

---

[4] *See Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995) ("[T]he Song-Beverly Act 'creates an affirmative duty upon ***the manufacturer*** ... to provide restitution or replacement when a covered defect ... is not repaired after a reasonable number of attempts.'") (emphasis added); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103-04 (2001) ("We believe, as did the court in Krotin ..., that the only affirmative step the [SBA] imposes on consumers is to 'permit[ ] the manufacturer a reasonable opportunity to repair the vehicle.' [Citation omitted.] Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible.").

4

including, notably:

- Researching and Drafting the Complaint in Federal Court,
- Filing seven Motions in Limine and responding to Defendant's Oppositions to same.
- Reviewing and Objecting to Defendant's five Motions in Limine.
- Researching and Analyzing Defendant's Answer to the Complaint.
- Filing a Joint Report Rule 26(f) Discovery Plan. (*Id*. at ¶¶ 12-28.)

Plaintiff's efforts were reasonably necessary to establish Defendant's liability. Here, Defendant ultimately agreed to buy back the Subject Vehicle for $140,000.00 plus attorneys' fees, costs, and expenses by single motion to the Court. (*Id*. at ¶ 26, Ex. 2.) Accordingly, Plaintiff's litigation efforts were reasonable as a matter of law. These efforts culminated in the recovery of Plaintiff's rightful damages. Thus, Plaintiff is entitled to recover fees, costs, and expenses under Cal. Civ. Code § 1794(d).[5]

## III.   LEGAL ANALYSIS

### A.    As the Prevailing Party, Plaintiff is Entitled to Attorneys' Fees, Costs, and Expenses

Plaintiff is the prevailing party under the SBA and the signed Rule 68 Offer. Ultimately, after one year of litigation, Defendant agreed to settle this case concerning Plaintiffs' Vehicle for $140,000.00, which is more than the amount of the Vehicle's total purchase price of $55,967.00. (*Id*. at ¶¶ 3, 41, Ex. 1, 3.) Accordingly, Plaintiff is the prevailing party for the purposes of recovering attorney fees, costs, and expenses. As the prevailing party, an award of attorney fees and costs to Plaintiff is <u>mandatory</u>:

> If the buyer prevails in an action under this section, the buyer *shall* be allowed by the court to recover as part of the judgment a sum *equal to the aggregate amount of costs and expenses, including attorney's fees* based on actual time expended, determined by the court to have been

---

[5] *See also Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990 ) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries.").

reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d) (emphasis added).[6] This fee-and-cost recovery provision reflects the Legislature's intent to provide "injured consumers strong encouragement to seek legal redress" for Lemon Law claims. *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal. 4th 985, 994 (1998); *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 817 (2006); *Wohlgemuth*, 207 Cal. App. 4th at 1262 ("[T]he provision for recovery of costs and attorney fees in [Civil Code] section 1794(d) is an important aspect of this consumer protection, and without it many would not be financially able to pursue a remedy").[7]

California courts have also consistently "rejected the notion the fee award must be proportionate to the amount of damages recovered." *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1508 (1987). "[T]he legislative policies are in favor [of the prevailing buyer's] recovery of all attorney fees reasonably expended, without limiting the fees" to a proportion of any recovery of damages or other monetary relief." *Reynolds v. Ford Motor Co.*, 47 Cal. App. 5th 1105, 1113 (2020). *See also Drouin v. Fleetwood Enterprises*, 163 Cal. App 3d 486, 493 (1985) (emphasis added) ("It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible. The trial court did not err in calculating attorneys' fees based on actual time expended.")

## B.    Plaintiff's Lodestar Fees is Reasonable

Under California law, the lodestar/multiplier is the primary method for

---

[6] *And see Gezalyan*, 697 F. Supp. 2d 1168 at 1170 ("Under California law, if a buyer prevails in an action under the [SBA,] she may recover 'the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.'") (quoting § 1794(d)).

[7] Such mandatory recoverable fees and costs include those "necessary to establish and defend th[is] fee claim . . .." *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982); *Robertson*, 144 Cal. App. 4th at 817 (fees for fee-and-cost motion) (remanded on other grounds); *Estate of Trynin*, 49 Cal.3d 868, 874 (1989) ("Where the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed."). Plaintiff is entitled to recover his fees in connection with this Motion.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

determining what fees are "reasonable" under the statutory attorney fees provision of Song Beverly. *Robertson,* 144 Cal. App. 4th 818-19. *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001) (California Supreme Court endorsing the lodestar method as the prevailing method for statutory fee awards); *Graciano*, 144 Cal. App. 4th at 154.

California's lodestar/multiplier method uses a two-step process for calculating fees:

Step One: Determine a lodestar value by multiplying time reasonably spent by Plaintiff's counsel by a reasonable hourly rate. *See In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556-57 (2009).

Step Two: Adjust or enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors, such as the degree of skill required, and the results achieved. *Id.*; *see also Ketchum*, 24 Cal. 4th at 1130, 1137-38. ("[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases.")

This "anchors the trial court's analysis ***to an objective determination*** of the attorney's services, ***ensuring the amount awarded is not arbitrary*.**" *Graciano*, 144 Cal. App. 4th at 154 (emphasis added); *Reynolds v. Ford Motor Co*., 47 Cal.App.5th 1105 (2020).[8]

Courts routinely determine that SLP's rates and hours are reasonable.[9] *See Williams v. Ford Motor Co*., No. 521CV01346SPGSHK, 2023 WL 405346, at *3

---

[8] ("Many statutory fee-award provisions begin with the lodestar method but are governed by the specific statutory requirement that the final fee award be 'reasonable' in nature. No such requirement is found in the Song-Beverly Act. The fee award must be based on the court's calculation of the 'actual time expended ... determined by the court to have been reasonabl[y] incurred.' [ (§ 1794, subd. (d).)] The legislature did not include a requirement that the court also determine [whether] the fees are reasonable in amount. Had the legislature intended such a requirement, it could easily have so stated…The court's review of the overall reasonableness of the attorney fees is, thus, restricted by the specific language in the fee award provision of the Song-Beverly Act.")

[9] *See also Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972, 1009 (2013) ("Affidavits of the Plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the Plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.")

(C.D. Cal. Jan. 24, 2023) (approving the Central District Court approved SLP's rates ranging from $295 to $595); (Shahian Decl., Ex. 13); *Rahman v. FCA US LLC,* 594 F. Supp. 3d 1199 (C.D. Cal. 2022) (where the Central District court granted 90% of SLP's requested lodestar fees and approved counsel's rates ranging from $285/hr. to $695/hr.) (Shahian Decl., Ex. 10); *Proa v. KMA* (Los Angeles Super. Ct., Case No. BC716646) (April 24, 2023) (where the Court approved SLP's rates ranging from $325/hr. to $610/hr. and granted a 35% multiplier) (*See* Shahian Decl., Ex. 14); *Sedlacek IV v. General Motors, LLC* (Los Angeles Co. Super. Ct. Civil Case No. 21STCV23811) (October 16, 2023) (approving SLP's rates ranging from $325/hr. to $610/hr.); (Shahian Decl., Ex. 16); *Rodriguez, et al, v. Hyundai Motor America* (Los Angeles Super. Ct., Case No. 21STCV01655) (July 6, 2023) (awarding 135% of SLP's lodestar and approving SLP's rates ranging from $325-610); (Shahian Decl., Ex. 15).[10]

1.   <u>Plaintiff's Counsel's Hourly Rates are Reasonable</u>

The Shahian Declaration cites multiple cases where Plaintiff's counsel's rates have been approved by courts throughout California, including the Central District. *See Goglin v. BMW of N. Am.*, LLC, 4 Cal. App. 5th 462, 473 (2016) (in Song-Beverly case, court accepted declarations demonstrating hourly rates that "various state and federal courts had previously awarded [Plaintiffs' attorney] attorney fees for comparable work at comparable hourly rates" as evidence of reasonableness of rates). Plaintiff recognizes, however, that the trial court is the ultimate arbiter of what rates

---

[10] Plaintiff expects that Defendant will, in its anticipated Opposition, attempt to mislead the Court by citing *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 807 (1994), and *Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992), to argue that the lodestar/multiplier approach does not apply and that the Court should reduce Plaintiff's requested fees. This would profoundly misrepresent the law applicable to contingent fee cases such as this one. **Neither *Nightingale* nor *Levy* involved a contingent fee agreement, as here.** (*See* Shahian Decl. [SLP took this case on a contingency basis].) Rather, both involved hourly rate agreements. Indeed, in *Nightingale*, the court itself noted that its holding did not apply to contingent fee agreements. *Nightingale*, at 105 n.6. Further, *Nightingale* is inapplicable because it was decided before the California Supreme Court's decision in *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-1132 (2001). In *Ketchum*, the Court held that unless a fee-shifting statute indicates otherwise, courts should presume the Legislature intended use of the lodestar method to calculate fees. *Ketchum, supra*, 1135-1136. Accordingly, neither *Nightingale* nor *Levy* place any limits on the fees sought in the context of a contingent fee agreement.

The difference between contingent fee agreements and hourly rate agreements was made clear in *Robertson*, which ruled that *Nightingale* and *Levy* do not apply to contingent fee agreements. *Robertson*, 144 Cal. App. 4th at 818. Instead, the court held that the correct method for calculating a fee award in a contingent fee case is the lodestar/multiplier approach. *See id.* Accordingly, the Court should disregard any argument by Defendant that *Nightingale* and *Levy* articulate the applicable standard here.

1   are reasonable—particularly given this Court's considerable experience in Lemon
2   Law cases. *See Warren v. Kia Motors Am., Inc*., 30 Cal. App. 5th 24, 36 (2018)
3   (experienced trial judges are the best judges of the value of professional services
4   rendered in their courts).

5          The hours billed by counsel are to be multiplied by a "reasonable hourly rate"
6   to generate the lodestar. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. In
7   determining an appropriate hourly rate, the trial court should apply rates
8   commensurate with the "hourly prevailing rate for private attorneys in the community
9   conducting noncontingent litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133.
10  Evidence of hourly rates sought by and awarded to the same law firm in other cases,
11  as well as experience of counsel, are "obviously relevant" to the attorney fees
12  determination. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005-06
13  (1982). In the absence of contrary evidence, a moving party's showing of rates that
14  have been upheld "compel [ ] a finding that the requested hourly rates were within the
15  reasonable rates for purposes of setting the base lodestar amount." *Graciano*, 144 Cal.
16  App. 4th at 156.7F[11]

17         The hourly rates for the attorneys who worked on this case are appropriate given
18  the relative experience and qualifications of these attorneys as evidenced by the
19  Declaration of Payam Shahian. (*See* Shahian Decl., Ex. 1-19.) They are like the rates
20  that have been approved by Courts in Los Angeles, the Central District, and
21  throughout the state. (*Id.*) In *Sandra J. Williams et al v. Ford Motor*
22  *Company (*United States District Court for the Central District of California Case
23  No.: 5:21-cv-01346-SPG-SHK) (Approving SLP rates from $295/hr to $595/hr
24  including Tionna Carvalho's 2022 partner rate of $550/hr; Eve Canton's (law clerk)
25  rate of $295/hr [Hector Calderon and Aylana Dias (law clerks) have similar

26  _____
27  [11] Plaintiff's counsel, in presenting evidence of their basic hourly rates, need not "explain the basis on which those hourly rates
    were awarded to counsel in other cases, the nature of other litigation, its difficulty and other factors which might have affected the
28  award." The basic rates merely are the starting point of a fee award calculation. *Margolin*, 134 Cal. App. 3d at 1005. Consideration
    of the other factors occurs *after* the court fixes the hourly rate and the number of hours spent, as part of analyzing whether the total
    fees should be modified. *Id.* (citing *Serrano*, 20 Cal. 3d at 49).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

experience]; Breita Linnell's (admitted in 2011) rate of $495/hr [Christian Castro (admitted in 2013) has similar experience]; Scott Johnson's (admitted in 1996) rate of $550/hr [Michael Raichelson (admitted in 1994), Ian McCalister (admitted in 1998), David Lunn (admitted in 1998) and Sanam Vaziri (admitted in 1995) have similar experience]; Nino Sanaia's (admitted in 2022) rate of $385/hr [Rosy Stoliker (admitted in 2019), Rabiya Trimizi (admitted in 2021), and Tara Mejia (admitted in 2022) have similar experience]; Joy Deleon's (admitted in 2000) rate of $575/hr [Ivy Choderker (admitted in 2000) and Elizabeth Larocque (admitted in 2002) have similar experience].) (*See* Shahian Decl., Ex. 13.)

In *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1204-5 (CA.C.D 2022) (Awarding SLP rates, against the same Defendant and defense counsel, from $285/hr to $695/hr including Tionna Carvalho's 2020 pre-partner rate of $425/hr; Sean Crandall's (admitted in 2015) 2021 rate of $425/hr [Christian Castro (admitted in 2013) has similar experience]; James Doddy's (admitted in 2004) 2020 rate of $595/hr [Ivy Choderker (admitted in 2000), Joy Deleon (admitted in 2000) and Elizabeth Larocque (admitted in 2002) have similar experience]; Jason Clark's (admitted in 2007) 2022 rate of $565/hr [Mani Arabi (admitted in 2012) and Olivia Avelino (admitted in 2007) have similar experience; Daniel Law's (admitted in 2016) 2020 rate of $425/hr.) (See Shahian Decl. ¶ 33, Ex. 10.)

In *Diana Parros v. Kia Motors America, Inc*. (Los Angeles Super. Ct. Civil Case No. BC710391) (April 5, 2024) (Awarding SLP rates $295/hr to $625/hour and granted SLP a 35% multiplier, including Tionna Carvalho's 2023 rate of $570/hr; Eve Canton's (law clerk) 2023 rate of $295/hr; Christine Haw's (admitted in 2013) 2023 rate of $500/hr [Regina Liou (admitted in 2007) has similar experience].) In *Proa v. KMA* (Los Angeles Super. Ct., Case No. BC716646) (April 24, 2023), the Los Angeles Court approved 100% of SLP's and associated counsel's fees plus a 35% multiplier of $30,457.88 with a total award of $117,480.38, and approving SLP's rates ranging from $325/hr. to $610/hr.,

including Ms. Carvalho (Nee Dolin's) 2022 partner rate of $550/hr.; Mani Arabi's (admitted in 2012) rate of $450/hr.) (*See* Shahian Decl., Ex. 14.)

In *Christine Hang v. Mercedes-Benz USA* (Los Angeles Co. Super. Ct. Civil Case No. 20STCV31327) (August 29, 2024) (where the Court determined that SLP rates between $295/hr and $610/hr were reasonable and consistent, including: Tionna Carvalho's 2024 partner rate of $595/hr; Mani Arabi's (admitted in 2012) 2022 requested hourly rate of $450 [Mr. Castro (admitted in 2013) has similar experience]; Ian McCallister's (admitted in 1998) 2024 rate of $595/hr; Joy Deleon's (admitted in 2000) 2022 rate of $575/hr; Rabiya Trimizi's (admitted in 2021) 2023 rate of $375/hr; Sanam Vaziri's (admitted in 1995) 2022 rate of $610/hr.) (*Id.* at Ex. 20.) In *Charles Steven Sedlacek IV v. General Motors, LLC* (Los Angeles Co. Super. Ct. Civil Case No. 21STCV23811) (October 16, 2023) (approving SLP's rates ranging from $325/hr. to $610/hr including Ms. Carvalho's 2023 partner rate of $570/hr; Ian McCallister's (admitted in 1998) 2022 rate of $595/hr [David Lunn (admitted in 1998) has similar experience]; James Caroll's (admitted in 2006) rate of $595/hr [Regina Liou (admitted in 2007) has similar experience].) (Shahian Dec., Ex. 16.)

## 2. Plaintiff's Counsel's Billable Hours are Reasonable

Plaintiff's fee recovery is based on the 156.30[12] hours spent by their attorneys litigating this case through this motion. As evidenced by the billing records submitted to the Court, the time spent is reasonable. (Shahian Decl., Ex. 23.) Had Defendant upheld its affirmative duty to buy back Plaintiff's vehicle, this Fee Motion—and indeed, this entire lawsuit—would be unnecessary. As evidenced by the billing records submitted to the Court, the time spent is reasonable. (Shahian Decl., Ex. 23.) These billing records reflect the actual time and descriptions of services billed in

---

[12] Although 15 SLP attorneys and 2 law clerks were staffed on this case, only 6 attorneys (Mani Arabi, Christian Castro, Joy de Leon, Elizabeth Larocque, Regina Liou and Ian McCallister) accounted for 111.00 hours out of the 156.30 total hours billed (i.e. 71%) with other attorneys performing non-duplicative tasks, such as: Ms. Mejia billing a total of 1.1 hours for drafting and finalizing Plaintiff's Federal Discovery Requests for Notice of PMQ Deposition, RFPs, and ROGs; Mr. Calderon billing a total of 2.0 hours for drafting repair chron; and Ms. Stoliker billing a total of 1.6 hours for drafting Plaintiff's Mandatory Settlement Conference Statement and Remote Appearance request.

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

connection with the litigation of this action by Plaintiff's counsel and have been audited to remove any entry that may be duplicative, redundant, unnecessary or otherwise. (*Id.*) Although the submission of such detailed time records is not necessary under California law,9F[13] if submitted, such records "are entitled to credence in the absence of a clear indication the records are erroneous." *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005).

Defendant forced Plaintiff to litigate this case for almost over a year. *See Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990) ("Parties who litigate with no holds barred in such cases as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries."); *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4t.h 101, 114 (2009) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiffs in response.").[14] Plaintiff's counsel's diligent efforts were required to achieve this favorable outcome.

In its anticipated Opposition, Defendant will invariably contend that Plaintiff "overstaffed" this case. Although Plaintiff staffed this case with several attorneys, a review of the billing records makes clear that no duplication occurred. Indeed, historically, where courts have reviewed SLP and its associated counsel's billing records, they determine that counsel litigated efficiently and effectively. Recently, in *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199 (C.D. Cal. 2022) the Court, analyzing California and Ninth Circuit authority, noted that even if 14 attorneys staffing a lemon law case were excessive, "the Ninth Circuit has held that a district

---

[13] *See Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986); *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992)

[14] *See also Graciano*, 144 Cal. App. 4th at 164 (mandatory fee-shifting provisions in consumer protection statutes (*e.g.*, the Lemon Law) reflect legislative policies favoring recovery of "all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery."); *Robertson*, 144 Cal. App. 4th at 820 (Lemon Law fee recovery provision (Civ. Code § 1794(d)) drafted "to make sure attorney's fees awards would be based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases would be economically feasible"); *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) ("[P]rovision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest. To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying.") (*citing* Consumer Legal Remedies Act, Civ. Code § 1770).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

court 'may not set the fee based on speculation as to how other firms would have staffed the case.'" *Id.* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008)). Rather, the *Rahman* court explained that "a district court's review is confined to determining whether counsel's staffing choices resulted in excessive or duplicative billing." *Rahman*, 594 F.3d at 1199.[15] Fee Motion Order in *Shepard v. BMW* (Los Angeles Superior Court Case No. BC622506) at p. 4 ("Based on its review of the evidence presented (including the work and time entries on the attorney's bills), the court finds that the billing entries in Shepard's attorneys' bills do not evidence inefficient or unreasonable billing, duplication of effort, padding of time entries, over-conferencing or multiple attendance by attorneys at the same court functions, as a result of the staffing and division of labor amongst Shepard's attorneys on this case.").

> In any event, [t]he court is not in a position … to determine the appropriate number of attorneys assigned to this particular case given that it is not privy to the inner workings of Plaintiff's counsel's law firm. Also, for better or worse, the use of a large number of attorneys in Song-Beverly Act cases appears relatively common. *See Ortega v. BMW of N. Am.*, LLC, No. 2:18cv6637 R (SK), 2019 WL 6792798, at *3 (C.D. Cal. Oct. 24, 2019) (noting that defendant used 15 attorneys and that is was "not uncommon" to use a large number of attorneys in lemon law cases). On their face, the billing records do not show that a significant amount of time was unreasonably spent getting ten attorneys up-to-speed on this case. *Id.* ("This Court declines to admonish the use of a larger number of attorneys, as it appears there was no duplicative billing[.]"). As discussed below, this case involved extensive discovery and **there is no obvious indication that a fewer number of attorneys would have generated significantly fewer hours**. The efficiency gained from specializing in these types of cases may have allowed Plaintiff's attorneys to familiarize themselves with this case with minimal effort. Finally, Plaintiff's counsel submitted a declaration, under the penalty of perjury, that all fees were entered contemporaneously, were not adjusted upward, and were not duplicative, redundant, or unnecessary. [] The court has no compelling reason to doubt the honesty or judgment of Plaintiff's counsel regarding the number of attorneys necessary to litigate this case.

---

[15] *See e.g. Zargarian v. BMW of N. Am.*, 442 F.Supp. 3d 1216, 1228-29 (C.D. Cal. Mar. 3, 2020) (a case where the court awarded Plaintiff's counsel the entire requested lodestar, it was observed that "the Court d[id] not take issue with Plaintiff's counsel's staffing decisions; from the billing records, it is clear that there was a strict division of labor between the firms, and the Court finds no evidence of duplicative work between the firms."); *Zomorodian v. BMW of N. Am.*, 2019 WL 6534513 at *8 (C.D. Cal. July 23, 2019) ("the Court has reviewed the hours billed with care and has determined that most of the hours billed by the 13 different attorneys have not been duplicative."); *Forouzan v. BMW of N. Am.*, 2019 WL 856395, at *6 (C.D. Cal. Jan. 11, 2019) ("… the Court has reviewed the hours billed with care and has determined that most of the hours billed by the 12 different attorneys have not been duplicative."); Shahian Decl. ¶ 16, Ex. 1.)

13

1

2     *Holcomb v. BMW of North America, LLC*, 2020 WL 759285, at *3 (S.D. Cal.

3     Feb. 14, 2020) (emphasis added); *See also Proa v. KMA* (Los Angeles Super. Ct., Case

4     No. BC716646) (April 24, 2023) ("The Court also observes that, notwithstanding the

5     length of time spent on this case, that Plaintiff's counsel has exercised billing

6     judgment, assigning research and drafting tasks to associates and junior partners, and

7     reserving more strategic and editing pursuits to senior partners charging higher

8     rates.") (Shahian Decl. ¶ 64, Ex. 19.)[16]

9         **C.    A Lodestar Multiplier Enhancement of 1.35 is Warranted**

10        The lodestar amount, once determined, can be increased by a "multiplier

11    enhancement" that is based on several factors, including: (1) the risks presented by

12    the litigation; (2) the novelty and difficulty of the legal and factual issues involved;

13    (3) the results obtained on behalf of the Plaintiff; and (4) the skill *exhibited* by counsel.

14    *See, e.g.*, *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009); *In re*

15    *Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003); *Graciano*, 144 Cal. App. 4th at

16    154.[17] *See also Santana v. FCA US, LLC*, 56 Cal.App.5th 334 (2020) (affirming an

17    award of over a $500,000 in attorney fees that included a multiplier of 2.0 in a lemon

18    law case where Plaintiff prevailed on the claims). Based on the analysis of these

19    factors set forth below, a multiplier of 1.35 (or $29,817.55) should be applied here.[18]

20              1.    Plaintiff's Counsel Obtained an Excellent Outcome

21        "The 'results obtained' factor can properly be used to enhance a lodestar

22    calculation where an exceptional effort produced an exceptional benefit." *Graham v.*

23

24    ─────────────────
      [16] A copy of the Order in *Holcomb v. BMW of N. Am., LLC*, Cas No. 18CV475JM(BGS) 2020 WL 759285 (S.D. Cal. Feb.
      14, 2020) is attached as **Exhibit 19** to the Declaration of Payam Shahian.

25    [17] *See also Reynolds v. Ford Motor Co.*, No. A154811, 2020 WL 1921742, at **2, 4 (Cal. Ct. App. Apr. 21, 2020)
26    (published) (upholding trial court award in SBA lemon law matter of $201,891 lodestar and 1.2 multiplier "based on
      the following factors: the complexity of the factual issues, counsel's extensive experience in this type of litigation,
27    and '[i]n litigating these types of cases with a large corporate defendant such as Ford Motor Company, many attorneys
      may decline to represent Plaintiff due to the financial resources of defendant and the prospect of long and hard fought
      litigation.'")

28    [18] "[T]he fact that counsel seeks a multiplier as a component of its fee request … is not itself a proper factor in determining the
      reasonableness of sought-after fees. In fact, it is not unusual for counsel to ask for a multiplier in contingent fee cases as this one."
      *Etcheson, supra*, at *51.

                                          14

*DaimlerChrysler Corp.*, 34 Cal. 4th 553, 582 (2005). Here, the results are apparent: after almost over a year of litigation, Plaintiff's counsel secured an outstanding recovery of $140,000.00 in exchange for a Vehicle that was purchased in 2016 for $55,967.00. (*See* Castro Decl. ¶¶ 3, 29, Ex. 1, 2.) This excellent result alone merits a multiplier enhancement. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (holding that courts may increase lodestar by taking into account quality of representation and results obtained).

2.    <u>The Risks Posed by This Litigation Were Substantial</u>

One factor considered in awarding a multiplier is the risk of non-recovery or delayed recovery that counsel shouldered in taking on the case. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("The lodestar adjustment approach … allows a court that awards attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment ….").[19] *See also Cazares v. Saenz*, 208 Cal. App. 3d 279, 287-88 (1989) (noting that contingency-based fee "may properly provide for a larger compensation than would otherwise be reasonable" given the "economic considerations separate and apart from the attorney's work on the case.") Courts have held that "a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case . . ." (*Cezares v. Saenz* (1989) 208 Cal.App.3d 279, 288.)[20]

Here, SLP undertook representation of Plaintiff on a contingency basis—if the action failed and Plaintiff did not recover, neither would their counsel. (Shahian Decl. ¶ 77.) SLP faced a genuine risk of not being paid for its services for years (if at all) while advancing thousands in costs and expenses to prosecute Plaintiff's claims

---

[19] "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of their work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1333 (quoting Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)).

[20] Moreover, "[T]he unadorned lodestar reflects the general local hourly rate for a fee-bearing case; . . . The adjustment to the lodestar figure . . . is intended to approximate market-level compensation for such services, which typically includes . . . a premium for the . . . **delay in payment of attorney fees**." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138.) (emphasis added).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

against Defendant, a large corporate defendant with the proven track record to engage in prolonged litigation (while Defendant's attorneys get paid regardless of outcome). Accordingly, a multiplier of 1.35 of $29,817.55 is appropriate for risk of non-payment.

3.    <u>Delay of Payment Justifies a Multiplier</u>

Moreover, the Court can award Plaintiff's counsel a multiplier based on delay in payment alone. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001) (the multiplier may provide "a premium for ... delay in payment of attorney fees.")  *See also Missouri v. Jenkins, supra*, 491 U.S. 274, 284 (1989) ["whether by application of current ... hourly rates or otherwise"].

Here, Plaintiff's counsel filed the complaint on May 15, 2023, and *has not been paid for over a year*. Accordingly, a multiplier of 1.35 is therefore appropriate for delay of payment alone especially in light of the fact that Plaintiff's counsel is seeking only their applicable rates (as opposed to current rates) for the years litigating this case. Thus, a multiplier of 1.35 is therefore appropriate for delay of payment alone in addition to the other factors listed above.

**D.    Defendant Has Agreed to Pay Plaintiffs' Litigation Expenses**

In the signed Rule 68 Offer, Defendant agreed to pay Plaintiff's costs and expenses by motion to the Court. (*See* Castro Decl. ¶ 26, Ex. 2.) The law recognizes Plaintiff's right to recover all costs *and expenses* that were reasonably incurred in prosecuting the case. Cal. Civ. Code § 1794(d). The inclusion of the word "expenses" in Civil Code section 1794(d) reveals that items beyond the statutory costs enumerated under Code of Civil Procedure section 1033.5 are recoverable. *Jensen v. BMW of North America*, 35 Cal. App. 4th 112, 137-38 (1995) (examining Legislative history of Song-Beverly to determine that the "costs and expenses" language was to be interpreted broadly to include such things as filing fees, expert witness fees, marshal's fees, etc., to "open the litigation process to everyone."); *Warren v. FCA Motors America, Inc.*, 30 Cal. App. 5th 24, 42-43 (2018) (finding that the trial court abused

its discretion in excluding trial transcript costs from Plaintiff'' cost award, and holding
that trial transcripts, though not ordered by the court or enumerated in section 1032,
were nonetheless recoverable under Cal. Civ. Code § 1794(d)).13F[21] Accordingly, the
Court should order Defendant to reimburse Plaintiff for $17,965.01 in litigation costs
and expenses. (Shahian Decl, Ex. 23.)

## IV.    CONCLUSION

For the reasons stated, the Court should order Defendant to pay the full amount
of attorneys' fees incurred in litigating this matter, for a total amount awarding
attorneys' fees, costs, and expenses of $129,468.43. This amount consists of (1)
$85.193.00 in attorney fees for Strategic Legal Practices, APC ("SLP"); (2) a 1.35
multiplier enhancement on the attorney fees (or $29,817.55); (3) $17,965.01 in costs
and expenses for SLP; and (4) an additional $4,500.00 for Plaintiff's counsel to
review Defendant's Opposition, draft the Reply, and attend the hearing on this
Motion (though counsel expects to incur over $4,500.00 in fees on these tasks).

Dated: November 12, 2024                              By:

*/s/ Christian R. Castro*

Christian R. Castro
Attorney for Plaintiff

---

[21] "Expenses" includes all expenses not part of overhead and ordinarily billed to paying clients regardless of whether they are recoverable under § 1033.5. *Bussey v. Affleck* (1990) 225 Cal.App.3d 1162. See, also, *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491, holding litigation expenses are far broader than costs.